# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **ROGER SCOTT BRYNER,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:08-CV-463-CW-SA** |
| **STATE OF UTAH, COUNTY OF SALT LAKE, MICHAEL RAWLEY [sic], FNU ROCKAZOLA [sic],** | |
| **Defendants.** | **District Judge Clark Waddoups** |
| | **Magistrate Judge Samuel Alba** |

Plaintiff, Roger Scott Bryner, filed this *pro see* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983. Plaintiff has been allowed to proceed *in forma paueris* under 28 U.S.C. § 1915(b). *See id.* § 1915. The court has now screened Plaintiff's complaint under 28 U.S.C. § 1915(e). Having carefully reviewed it, the court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted. As a result, the court recommends that it be dismissed.

## BACKGROUND

Plaintiff was arrested at the Utah Third District Matheson Courthouse on April 18, 2007. (Doc. 3, Original Complaint, ¶13.) Plaintiff was charged with and convicted of one count of Criminal Trespass, a class B misdemeanor, and one count of Disorderly Conduct, a class C misdemeanor. (Doc. 3, ¶17, and Exhibit A, Case History Report.)

Plaintiff filed his complaint in this case on June 17, 2008 (Doc. 3), the same day

Plaintiff's motion to proceed *in forma pauperis* was granted (Doc. 1, 2). United States District

Judge J. Thomas Greene was assigned to the case. (Doc. 2.)

On July 30, 2008, Defendant Rowley filed a motion to dismiss. (Doc. 4, 5.) In response

to Defendant Rowley's motion, Plaintiff filed a motion to strike Defendant Rowley's motion to

dismiss, or in the alternative, a motion for leave to file an amended complaint. (Doc. 8, 9, 10.)

Defendant Rowley then filed an opposing response to Plaintiff's pleading (Doc. 11), to which

Plaintiff filed a reply (Doc. 13).

On November 6, 2008, the State of Utah filed a motion to dismiss. (Doc. 15, 16.)

Following a January 5, 2009 hearing, Judge Greene dismissed the State of Utah from this action.

(Doc. 18, 20.)

On March 5, 2009, Judge Greene referred the case to United States Magistrate Judge

Samuel Alba, pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. 22.) On August 14, 2009, Judge

Greene recused from the case, which was reassigned to United States District Judge Clark

Waddoups. (Doc. 24.) Judge Waddoups then referred the case to Magistrate Judge Alba

pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 25.)

On October 16, 2009, the court noted that Plaintiff had filed a motion to amend his

complaint. (Doc. 9, 26.) The court ordered Plaintiff to file his proposed amended complaint

within 10 days of the date of the order.

On Friday, October 30, 2009, the day Plaintiff's proposed amended complaint was due,

Plaintiff filed a motion "to clarify that 10 days is extended pursuant to Rule 6(d) or in the

alternative deem Amended Complaint filed on the morning of 11/2/2009 timely." (Doc. 27.) On

Monday, November 2, 2009, Plaintiff filed his proposed amended complaint. (Doc. 28.) The

following week, on November 9, 2009, Plaintiff filed a "Supplemental Information on Claim

Preclusion Under Heck, Jury Instructions From Conviction." (Doc. 29.)

## ANALYSIS

### I. Screening Standard

Whenever the court authorizes a party to proceed without the prepayment of fees under

the *in forma pauperis* statute, the court is required to dismiss any claims in a complaint if they

are frivolous, malicious, or fail to state a claim upon which relief can be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B). Because Plaintiff is proceeding *in forma pauperis*, Section 1915(e)(2)(B)(ii)

applies to this case and the court reviews and screens Plaintiff's case before allowing it to

proceed. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is

obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give

him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir.

1999). For screening purposes, the court "presumes all of plaintiff's factual allegations are true

and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106,

1109 (10th Cir. 1991).

In evaluating the propriety of dismissing a complaint for failure to state a claim upon

which relief can be granted, this court takes all well-pleaded factual assertions as true and regards

them in a light most advantageous to the plaintiff. *See Ridge at Red Hawk L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true,

the plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008); *Kay*, 500 F.3d at 1217 (quoting *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002) ("In determining whether a dismissal is proper, [the court] must accept the allegations in the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff."). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

The court must construe Plaintiff's *pro se* "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). In the Tenth Circuit, this means that if the court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's

4

failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.; see also Peterson v. Shanks*, 149 F.3d 1140, 1153 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam), *cert. denied* 493 U.S. 1059 (1990)). Dismissing the complaint "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir.), *cert. denied* 534 U.S. 922 (2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotations marks omitted)).

## II. Sufficiency of Plaintiff's Proposed Amended Complaint

As mentioned above, Plaintiff filed his proposed amended complaint on Monday, November 2, 2009, although the pleading was due, under the Federal Rules of Civil Procedure, on Friday, October 30, 2009. As a result, Plaintiff filed a motion to clarify that ten days is extended to him to file the proposed amended complaint pursuant to Rule 6(d), or in the alternative, deem timely the Proposed Amended Complaint. (Doc. 27.) The court does not reach Plaintiff's new motion because it concludes that it makes no difference whether the court allows Plaintiff to file his Proposed Amended Complaint; having carefully examined Plaintiff's Proposed Amended Complaint, the court determines that it fails to state a claim upon which relief can be granted.

Within Plaintiff's convoluted and confusing Proposed Amended Complaint is a section entitled "Causes of Action," which contains ten requested remedies, such as injunctive relief and damages (Doc. 28, at 15-16) and two statements that can be liberally construed to be "causes of action." The first of these two causes of action appears to be that the Utah Government Immunity Act is unconstitutional to the extent it precludes Plaintiff from seeking damages for prosecution "later," after *Heck v. Humphrey* no longer applies. (Doc. 28, at 16.) The second of these two causes of action appears to be that the Utah Government Immunity Act is unconstitutional to the extent that it precludes Plaintiff from seeking any damages for prosecution for contempt. (Doc. 28, at 16.) The court has carefully reviewed Plaintiff's entire Proposed Amended Complaint looking for support and clarification of these two bare, somewhat confusing and vague statements, but has found none. Although the court must construe Plaintiff's Proposed Amended Complaint liberally, the court must not become Plaintiff's advocate by constructing his legal arguments for him. Plaintiff has provided the court with no support for either of these two claims. Therefore, Plaintiff has not posed a plausible right to relief in either of these two claims. As a result, the court concludes that Plaintiff has not met his burden in pleading these two causes of action, and they both fail to state a claim upon which relief can be granted.

Because Plaintiff's "Causes of Action" section of his Proposed Amended Complaint does not contain a viable claim, the court, in liberally construing Plaintiff's pleading, has carefully examined the rest of the Proposed Amended Complaint to piece together Plaintiff's other claims. Plaintiff appears to allege the following claims under §1983: (1) violation of his First Amendment rights; (2) violation of his Sixth Amendment rights; (3) violation of his Fourteenth

6

Amendment rights; (4) wrongful arrest; (5) denial of access to the courts; (6) wrongful

imprisonment; (7) malicious prosecution; (8) abuse of process; and (9) excessive force.  Plaintiff

also appears to assert a state claim for (10) intentional infliction of emotional distress.  Plaintiff

requests two million dollars in damages.  (Doc. 28, Proposed Amended Complaint, at 16.)

## A.  § 1983 Claims[1]

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 suit

cannot be used as a vehicle to launch collateral attacks on criminal convictions or sentences.  *Id.*

at 480-82, 487.  In its holding, the Court explained that, in order to obtain the requested relief, a

plaintiff in a § 1983 action "must prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

make such determination, or called into question by a federal court's issuance of a writ of habeas

---

[1]The court has relied upon its application of *Heck v. Humphrey* in its analysis of most of Plaintiff's § 1983 claims; however, the *Rooker-Feldman* doctrine may also apply to this case.

> The *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, . . . and claims inextricably intertwined with a prior state-court judgment. . . .  In other words, *Rooker-Feldman* precludes a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.

*Thurgood v. Burton*, 248 F. Supp. 2d 1090, 1092 (D. Utah 2003) (quoting *Kenmen Engineering v. City of Union*, 314 F.3d 468, 472-73 (10th Cir. 2002)).  A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that it would in substance defeat or negate the state court's judgment.  *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483-84, n.16 (1983).

Plaintiff's convictions have not been overturned.  Therefore, it appears that the *Rooker-Feldman* doctrine also would bar most of Plaintiff's claims.

corpus, 28 U.S.C. § 2254." *Id.* at 486-87. Plaintiff has not shown the court that his criminal conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a writ of habeas corpus; therefore, *Heck* is relevant in this case.[2]

*1. Fourteenth Amendment*

Although the disorganization and verbosity of the Proposed Amended Complaint make it somewhat difficult to ascertain the specific grounds for each of Plaintiff's claims, and although Plaintiff seeks to split hairs in describing several of his claims in order to avoid the application of *Heck*, it is apparent that Plaintiff cannot bring most of his § 1983 claims without undermining the validity of Plaintiff's conviction, sentence, or confinement, as prohibited under *Heck*. For example, it appears Plaintiff complains that his Fourteenth Amendment rights were violated when he was denied a fair trial and denied the possibility of a fair trial in federal court by the destruction of evidence (presumably the digital tape recording). This claim is inextricably linked to Plaintiff's criminal trial and conviction, as a decision concluding that the destruction of evidence denied Plaintiff of a fair trial would undermine the validity of Plaintiff's conviction.

_____

[2]Although Plaintiff asserts that because he has filed an appeal from a Justice Court conviction, that conviction has somehow been made void or of no effect, Plaintiff's assertion is erroneous and has no basis in law. Plaintiff's conviction stands until an appellate court overturns it.

*2. Wrongful Arrest, Wrongful Imprisonment, Malicious Prosecution, and Abuse of Process*

Likewise, Plaintiff's claims for wrongful arrest (which presumably attacks the grounds of his arrest),[3] wrongful imprisonment (which appears to be based on the events surrounding his arrest and indictment), malicious prosecution (presumably for prosecuting the case in which Plaintiff was convicted), and abuse of process (presumably for abuse of process in pursuing the case against Plaintiff, in which he was convicted) are all inextricably linked to and would undermine the validity of Plaintiff's conviction stemming from his April 18, 2007 arrest. As such, they may not be brought under *Heck*.[4]

*3. First Amendment*

Plaintiff also appears to allege a First Amendment claim under § 1983. Although Plaintiff does not specifically identify his First Amendment claim, it appears that he is alleging a claim for unlawful retaliation for the exercise of protected speech. To establish a claim for unlawful retaliation by a defendant due to a plaintiff's exercise of a first amendment right, a plaintiff must show that "(a) he . . . was engaged in a constitutionally protected activity; (b) the

---

[3]Proof of a lack of probable cause is a necessary element for both a wrongful arrest claim and a malicious prosecution claim under § 1983. Plaintiff's existing conviction is proof that a jury found probable cause for his arrest and prosecution; therefore, these claims could only be successful if they undermined the validity of Plaintiff's conviction.

[4]The court notes that it is difficult to determine who the defendant is as to several of Plaintiff's claims. As the Tenth Circuit has explained, it is particularly important in § 1983 cases "that the complaint makes clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007).

It appears that Plaintiff may be bringing this claim as it relates to two discrete time periods. First, Plaintiff outlines events that began in October 2006, when Utah State District Judge Leslie Lewis's bailiff, Defendant "Rockazola," confronted Plaintiff and "harass[ed]" him until Plaintiff left the courthouse. Plaintiff suggests that this treatment was a reaction to Plaintiff's involvement in a campaign to remove Judge Lewis from her judgeship. Plaintiff alleges that after the first incident he was followed by two deputies everywhere he went in the Matheson Courthouse. When he complained to the supervising sergeant and lieutenant, he was told that he had to obey the bailiffs, told that he had to leave the building, and escorted from the building. Plaintiff claims that because of this treatment, he feared entering the courthouse, accessing the records he needed in his custody case, or using the research library in the basement. (Doc. 28, Proposed Amended Complaint, at 4-5.)

Plaintiff's claim, as it relates to the October 2006 incident, fails because it does not meet the second requirement of a First Amendment retaliation claim. Although Plaintiff states generally that because of the treatment he received he feared reentering the courthouse, Plaintiff has not alleged that he no longer engaged in that activity, and any reference that Plaintiff may have ceased entering the courthouse is contradicted by other factual allegations in his Proposed Amended Complaint. Plaintiff recounts in his Proposed Amended Complaint other incidents in

which he entered the Matheson Courthouse to conduct legal business. The court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading.[5]

The other events Plaintiff appears to base this claim upon are those that occurred on April 18, 2007, when he was arrested at the Matheson Courthouse. Plaintiff alleges that he went to the courthouse that day to file a document entitled "Verified Objection to Writ of Garnishment issued on March 29, 2007 and request for hearing within 10 days." (Doc. 28, at 6.) Plaintiff claims that because he was not allowed to file this document and get a hearing due to Defendant Rowley's actions, he had to file a bankruptcy action and a collateral lawsuit involving a trust to get the result he had desired to achieve with the Verified Objection to Writ of Garnishment. (Doc. 28, at 7.) Plaintiff describes a sequence of events, particularly involving Defendant Rowley, that led to his arrest and resulted in him not filing his pleading. (Doc. 28, at 6-11.)

Even when construing the facts in Plaintiff's favor, Plaintiff's allegations do not support a First Amendment claim for retaliation because his allegations do not meet the second or third requirements of this claim. They do not meet the second requirement because, in the events leading up to his arrest, Plaintiff was told to leave the courthouse for *that day*. Plaintiff complains that this denied him access to the court because he could not access the date stamp to file his document. Plaintiff's argument ignores that he could have simply left the building and

---

[5]Plaintiff has not alleged or set forth facts supporting a claim that he ceased participating in the campaign against Judge Lewis as a result of these experiences.

filed his document by using the outside date stamp and document drop.[6]  Therefore, because another option was readily available for Plaintiff to use to file his pleading, the second element of Plaintiff's claim cannot be met.

Finally, Plaintiff's allegations do not support his First Amendment claim for retaliation because he has failed to show--or allege--that Defendant Rowley (or any of the other defendants) was substantially motivated as a response to Plaintiff's exercise of his constitutionally protected conduct (i.e. filing court papers).  Based on Plaintiff's conviction, it is presumed that Defendant Rowley's decision to arrest Plaintiff was supported by probable cause; that decision was based on Plaintiff's earlier disturbance and decision to disobey the command to leave the courthouse, not in response to Plaintiff's desire to file court papers.  Any allegation that Defendant Rowley did not have a proper basis to arrest Plaintiff would bar Plaintiff's claim under *Heck*, because such an allegation would undermine the validity of Plaintiff's conviction.

*4.  Denial of Access to the Courts*

Plaintiff also appears to assert a claim under § 1983 that he was denied access to the courts by abuse of police power.  This claim also appears to be based on the events of April 18, 2007, when Plaintiff was arrested.  As discussed above in the court's analysis of Plaintiff's First Amendment claim, the allegation that he was being denied the ability to file his pleading belies

---

[6]In addition, as noted below, an exhibit attached to Defendant Rowley's Reply in support of his Motion to Dismiss is a state court docket sheet revealing that Plaintiff filed his pleading the following day, on April 19, 2007.  (Doc. 11, Exhibit A.)  Plaintiff fails to allege that this single day delay caused him to suffer an "adverse action"; therefore, Plaintiff's allegation does not satisfy the objective "chilling" standard required by *Van Deelen*.

the fact that Plaintiff could have simply left the building and filed his document by using the outside date stamp and document drop.[7]  (Doc. 11, Exhibit A.)  In addition, his claim that the police were abusing their police power in the events leading up to his arrest bars Plaintiff's claim under *Heck* because it would undermine the validity of Plaintiff's conviction.

*5. Sixth Amendment*

Plaintiff also mentions that he is bringing a claim under the Sixth Amendment.  The court has had a difficult time determining the basis of this § 1983 claim, but presumes that it is based on Plaintiff's statements in his Proposed Amended Complaint that he was denied a speedy trial because his retrial in the state district court "still ha[s] not even begun," and his appeal was delayed.  (Doc. 28, at 13.)  Plaintiff also states, "I believe there is clear intention to delay rulings on anything I file because while the law requires that all submitted motions must be ruled upon in less than 2 months in Utah, and any incidents where this is violated reported by the Judge, the Judges have not reported the excessive delays in my cases."  (Doc. 28, at 14.)  This claim is so conclusory and vague that the court has had a difficult time identifying it.  Plaintiff has pointed to the age of some of his state court motions, but he has not alleged any other facts supporting his claim.  Instead, Plaintiff has simply stated his suspicions that rulings upon his motions are being purposefully delayed in some kind of state court conspiracy.  As a result, the court concludes that this claim of denial of a speedy trial contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim."  *See Iqbal*, 129 S. Ct. at

---

[7]As discussed below, this allegation also ignores that Plaintiff filed his pleading the following day.

1951.[8]   Therefore, because Plaintiff's Sixth Amendment has no legal or factual support, it fails

to state a claim upon which relief can be granted.[9]

*6.  Excessive Force*

Finally, Plaintiff's last claim brought under § 1983 is one alleging excessive force,

apparently against Defendant Rowley.  Plaintiff recounts the incident on April 18, 2007, when he

sought to file a pleading and set a hearing before Judge Toomey.  (Doc. 28, 7-9.)  Plaintiff

understood that he had to schedule the hearing with Judge Toomey's clerk.  Judge Toomey's

clerk came out to talk to Plaintiff.  She was accompanied by two sheriff's deputies, including

Defendant Rowley.  According to Plaintiff, Judge Toomey's clerk said that she was new, did not

know any process for setting hearings, and told Plaintiff to go to the first floor room to file the

document and wait for a decision from Judge Toomey.  Plaintiff states that he knew he could file

---

[8]It is possible that Plaintiff's Sixth Amendment claim is based on his complaint that between the statute of limitations and the restrictions of *Heck*, he will be barred from pursuing his claims.  Plaintiff alleges, "[b]y simply prosecuting me in a court without any record for over 2 years any random nazi in the state of Utah can prevent a federal suit, so long as they drag the prosecution out long enough, and I believe this is a regular practice."  (Doc. 28, at 13.)  On the contrary, as Defendant Rowley explains in his pleading, the Supreme Court made clear in *Heck* that the statute of limitations is not implicated because "under our analysis, the statute of limitation poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen."  *Heck*, 512 U.S. at 489.  In addition, pursuant to Utah Code Ann. § 78-12-25(3), the statute of limitation period for § 1983 actions brought in Utah is four years.  *See Larson v. Snow College*, 189 F. Supp. 2d 1286, 1298 (D. Utah 2000).

[9]Plaintiff's Proposed Amended Complaint mentions that Plaintiff believes improperly obtained information was used in the determination of his custody case, but he does not, in any clear way, state this allegation as a legal claim, and the court cannot determine against which defendant Plaintiff is making this allegation.  Because the court cannot determine in any confident way what federal cause of action this allegation is meant to support, the court does not address it.

the document there in the room, so he informed Judge Toomey's clerk that she was wrong and he would just deal with the woman, Ernada, who "manned the room on the third floor where the incident happened." (Doc. 28, at 7.) Plaintiff then asked Ernada to notarize the document so that Plaintiff could stamp it with the date stamping machine and throw it in the filing basket. According to Plaintiff, "Ernada then indicated that I was right and I could file the document right there, and politely complied with my request to notarize the document." (Doc. 28, at 8.) Plaintiff then moved to the date stamper, but was "pushed backwards by Deputy R[o]wley who proceeded to verbally berate me for disagreeing with [Judge Toomey's clerk]." (Doc. 28, at 8.) Plaintiff told Defendant Rowley that it was none of his business and persisted in trying to use the machine in order the file his pleading. According to Plaintiff, Defendant Rowley then forcefully grabbed Plaintiff and started shoving him toward the door. Plaintiff alleges that "I did nothing to resist other than telling him my stuff [papers and pen] was still there [on the counter]. *I did have to push back to prevent being slammed into the doors and to get the words out about the left items*. The amount of force used[] was significant despite the fact I did absolutely nothing to resist or disobey. I was lifted on both shoulders and shoved with what appeared to be the full force of the deputies. Rawley [sic] grabed [sic] the items then I proceeded to walk without lifting and shoving to elevator [sic] where I was directed to go, then towards the metal detectors agin [sic] where I was directed to go." (Doc. 28, at 8-9.)

The court examines excessive force claims "under the Fourth Amendment standard of objective reasonableness." *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). "In determining the objective reasonableness of an officer's conduct [the court] look[s] to the totality

of the circumstances, viewing the situation 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Zia Trust Co. v. Montoya*, __ F.3d __, 2010 WL 780201, at *2 (10th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In so doing, the court recognizes that "officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

Looking at the alleged facts from the perspective of a reasonable officer on the scene, the court concludes that Plaintiff's excessive force claim lacks merit. Plaintiff did not comply with the statement of Judge Toomey's clerk (who was accompanied by Defendant Rowley) that Plaintiff should file his document on the first floor. When Plaintiff insisted on doing things the way he wanted to do them, Defendant Rowley tried to stop Plaintiff and told Plaintiff to comply with Judge Toomey's clerk's instructions. Plaintiff still refused to comply, and instead told Defendant Rowley it was none of his business. Further, Plaintiff admits that he pushed back at Defendant Rowley. Defendant Rowley could have reasonably perceived during this string of events that Plaintiff was engaging in disorderly conduct in the courthouse and resisting Defendant Rowley's attempts, as a courthouse law enforcement officer, to maintain order by having a member of the general public cooperate with a court employee's (Judge Toomey's clerk's) reasonable instructions. Finally, when Plaintiff pushed back at Defendant Rowley,

Defendant Rowley could have reasonably perceived that Plaintiff was resisting and engaging a law enforcement officer with force.[10]

In conclusion, all of Plaintiff's 1983 claims fail to state a claim on which relief can be granted. Therefore, because Plaintiff is proceeding *in forma pauperis*, the court concludes that Plaintiff's § 1983 claims must be dismissed under § 1915.

## B. State Law Claim

Plaintiff also alleges a claim of intentional infliction of emotional distress. This is a state law claim. In analyzing pendant state claims, the court applies the federal standards for assessing a motion to dismiss. *See Perlmutter v. United States Gypsum Co.*, 54 F.3d 659, 662 (10th Cir. 1995); *Bishop v. Federal Intermediate Credit Bank*, 908 F.2d 658, 663 (10th Cir. 1990). The court concludes that Plaintiff's state claim is precluded by the procedural and substantive provisions of the Utah Governmental Immunity Act.

Procedurally, the state law claim must be dismissed because Plaintiff failed to timely file this action after notice of the denial of his claim, pursuant to Utah Code Ann. § 63G-7-403 (2008). Defendant Rowley explains that although Plaintiff did file a notice of claim on April 24, 2007, Plaintiff's claim was denied on April 30, 2007, beginning the one year time within which to file the claim. Plaintiff's "amended" notice of claim was filed with the Salt Lake County Clerk on April 21, 2008, which was beyond the one year deadline to file a notice of claim. *See*

---

[10]Plaintiff has supplied the court with a DVD recording of that day, and it is apparent that Plaintiff is a very large man; thus, Defendant Rowley could have reasonably perceived that he needed to use a lot of his strength and force to handle a man of Plaintiff's size.

U.C.A. § 63G-7-402. Failure to strictly comply with the Governmental Immunity Act deprives this court of subject matter jurisdiction. *See Rushton v. Salt Lake County*, 977 P.2d 1201, 1203 (Utah 1999). Further, the Utah Supreme Court has repeatedly held that the provisions of the Governmental Immunity Act must be strictly followed when the action is against a county, and service upon the county clerk is mandatory. *See Gurule v. Salt Lake County*, 69 P.3d 1287, 1289 (Utah 2003). Therefore, Plaintiff's state law claim must be dismissed because this court lacks subject matter jurisdiction.

Plaintiff's claim is also substantively barred under the Governmental Immunity Act. Under Utah Code Ann. § 63G-7-301(5) (2008), immunity is not waived for injuries that arise out of, are connected with, or result from:

> (a) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> (b) assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, or violation of civil rights; . . .

Utah Code Ann. § 63G-7-301(5) (2008) (emphasis added). Accordingly, Plaintiff's state claim is substantively barred by Utah law.

### III. Sufficiency of Plaintiff's Original Complaint

Because Plaintiff has not filed his Proposed Amended Complaint, the court also examines Plaintiff's Original Complaint to determine whether the court has jurisdiction over Plaintiff's claims and whether Plaintiff states a claim upon which relief can be granted.

In his Original Complaint, Plaintiff alleges that Defendants violated his rights by: (1) denying him access to the courts, (2) wrongful arrest, and (3) using excessive force during his April 18, 2007 arrest. Plaintiff also alleges (4) his First Amendment rights to criticize and seek removal of a state judge were violated by police actions and a campaign to harass him; (5) his Fourteenth Amendment right to a fair trial was denied by destruction of evidence; and (6) his Sixth Amendment rights to a speedy trial were violated. Finally, Plaintiff also alleges (7) malicious prosecution, (8) abuse of process, and (9) intentional infliction of emotional distress.

The court has addressed all of these claims in its analysis of Plaintiff's Proposed Amended Complaint. The court has not found anything in the Original Complaint that would affect its analysis of these claims or cause the court to arrive at a different recommendation.

### IV. Rule 11 Concerns

Finally, the court feels obligated to express its concerns over Plaintiff's intention in filing this action and over Plaintiff's forthrightness with the court. Among the pleadings filed in this case is Defendant Rowley's Motion to Dismiss. (Doc. 5.) This motion is partially brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and is a factual attack on the accuracy of Plaintiff's allegations. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). When analyzing a factual attack, "a district court may not presume the truthfulness of the complaint's factual allegations" and may examine matters outside the pleadings. *Id.* at 1003 (citations omitted).

Attached to Defendant Rowley's Reply in support of his Motion to Dismiss is a state court docket sheet revealing that Plaintiff filed his document entitled "Verified Objection to Writ

of Garnishment issued on March 29, 2007 and request for hearing within 10 days" on April 19, 2007, the day after he alleges he was prevented from filing that particular pleading. (Doc. 11, Exhibit A.) Yet, Plaintiff argues in his Proposed Amended Complaint that because he was not allowed to file this pleading on April 18, 2007, he had to file a bankruptcy action and a collateral lawsuit involving a trust to get the result he had desired to achieve with the Verified Objection to Writ of Garnishment. (Doc. 28, at 7.) The fact that Plaintiff filed his pleading the following day calls into question whether Plaintiff is being forthright with the court in asserting that he had to file another action because he was not able to file this pleading on April 18, 2007. As noted above, Plaintiff has alleged two claims for which this factual omission is important.

As noted in a recent Report and Recommendation in a different case (Case no. 2:09-cv-253-CW, Doc. 36 n.10), Plaintiff has filed numerous cases with this court. The court is concerned that Plaintiff understand he may be sanctioned by the court if he is found not to be acting in compliance with Rule 11 of the Federal Rules of Civil Procedure.

### RECOMMENDATION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's complaint be **DISMISSED**. **IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 4), Plaintiff's Motion to Strike (Doc. 8), and Plaintiff's Motion for Leave to File Amended Complaint (Doc. 8) be denied as **MOOT**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after receiving it.

Failure to file objections may constitute a waiver of those objections upon subsequent appellate review.

DATED this 22nd day of March, 2010.

BY THE COURT:

_____
SAMUEL ALBA
United States Magistrate Judge